IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

ANTHONY P. HEARD, JR.,

        Plaintiff,

Case No. 20-CV-548-jdp

v.

JAMES PATTERSON, *et al.*,

        Defendants.

_____

**DEFENDANT DR. PATTERSON'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**
_____

Plaintiff Anthony Heard ("Heard") claims that Defendant James Patterson, M.D. ("Dr. Patterson") violated his Eighth Amendment rights by delaying treatment for his swollen leg. Heard specifically claims that Dr. Patterson was deliberately indifferent because Dr. Patterson did not see Heard for a nine-day time period that overlapped completely with a ten-day course of treatment prescribed by another doctor and during which Heard did not complain of pain or swelling.

This Court should grant summary judgment for Dr. Patterson for at least three reasons:

- There is no evidence that delays in care—if any—worsened Heard's condition or caused him needless pain. During the alleged nine-day delay, Heard had a prescription for diuretics, pain killers, and ten days of antibiotics, and was instructed to keep his leg elevated. If Dr. Patterson had seen Heard during the alleged nine-day delay, he would not have altered the treatment ordered for Heard. There is thus no evidence that a delay in treatment caused Heard harm.

- Dr. Patterson was not deliberately indifferent to a serious medical condition because Dr. Patterson did not know of and disregard a substantial risk to Heard. To the contrary, the medical records indicate that another physician ordered a medically appropriate course of treatment, that Heard's symptoms were improving, and that Heard did not complain of pain and swelling in his legs for eight days. The records also show that when Heard complained of pain and swelling, he was seen the next day.

- Deliberate indifference requires personal involvement in the alleged constitutional violation. Dr. Patterson was not responsible for scheduling inmate appointments at the prison and lacks the required personal involvement to be liable under Section 1983 for scheduling delays.

**Factual Background**

Anthony Heard was an inmate at Wisconsin Secure Program Facility ("WSPF") in 2018. (PFOF 1). Heard has several chronic conditions affecting his knees and legs, including degenerative joint disease, osteoarthritis of the left knee, old fractures to the proximal tibia and fibula, a history of Blount's disease, hypertension, and morbid obesity. (PFOF 2). Heard also has a history of chronic swelling in his legs. (PFOF 3).

Dr. Patterson was a locum tenens physician assigned to WSPF from March to October 2018. (PFOF 4). He was not employed by the Department of Corrections or the State of Wisconsin. (PFOF 5). Dr. Patterson only worked Monday through Thursday. *(*PFOF 6*).* He did not work on the weekends and had various other days off for vacation or personal time. *(*PFOF 6). On the days Dr. Patterson was scheduled to work, Dr. Patterson was given a list of inmates to see that day. (PFOF 7). Dr. Patterson was not tasked with scheduling inmate appointments, and inmates could also be scheduled to see other providers. (PFOF 8). When inmates with emergent needs required evaluation, or if there was a lockdown or other circumstances that took precedence, the scheduled appointments would be rescheduled to accommodate the circumstances. (PFOF 9).

On Saturday, April 7, 2018, Heard complained of numb and swollen legs. (PFOF 10). He saw Nurse Kemerling about his condition the same day. (PFOF 10). Nurse Kemerling contacted the on-call doctor, Dr. Kuber. (PFOF 11). Dr. Kuber ordered Lasix for five days, ibuprofen for seven days, and Clindamycin for ten days. (PFOF 11). Lasix is a diuretic, ibuprofen is a pain reliever, and Clindamycin is an antibiotic. (PFOF 12). Dr. Kuber also instructed Heard to elevate his legs frequently. (PFOF 11). The next day, Sunday, April 8, Heard saw Nurse West and reported an improvement in his condition. (PFOF 14).

On Monday, April 9, Dr. Patterson was scheduled to see various inmates. (PFOF 15). On any given day, including April 9, Dr. Patterson saw as many of the scheduled inmates as time allowed, given other circumstances at the jail. (PFOF 15). Dr. Patterson was unable to see Heard on April 9 due to time constraints, and he directed the Health Services Unit to "reschedule for tomorrow if possible." (PFOF 16).

On Sunday, April 15, Heard submitted a Health Services Request complaining that he was on the doctor's list but had not been seen. (PFOF 18). The request does not indicate that Heard was in pain, that his legs were swollen, or that his condition had worsened. (PFOF 18). On Tuesday, April 17, Dr. Patterson was also unable to see Heard due to time constraints and requested that the appointment be rescheduled. (PFOF 19). From April 8 until April 17, Heard did not submit any Health Services Requests complaining of pain or swelling in his leg. (PFOF 20). If Dr. Patterson had seen Heard during that time period, he would not have changed the course of treatment ordered by Dr. Kuber and would not have ordered any additional treatment. (PFOF 21).

After his April 17, 2018 appointment was rescheduled, Heard submitted an Inmate Complaint stating that his "leg is still swollen and very painful." (PFOF 22). The complaint was received on Wednesday, April 18 and Dr. Patterson saw Heard that day. (PFOF 22-23). Heard reported that his condition had somewhat improved. (PFOF

3

23). Dr. Patterson ordered an ultrasound, labs, compression stockings, and more antibiotics. (PFOF 24). The ultrasound was negative, and the labs were not concerning. (PFOF 25). Dr. Patterson would not have ordered additional antibiotics before April 18 because Dr. Kuber prescribed Heard ten days of antibiotics on April 7. (PFOF 26).

## Summary Judgment Standard

Summary judgment is not a disfavored means of resolving cases. *See Celotex Corp v. Catrett*, 477 U.S. 317, 327 (1986). Instead, summary judgment is an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* Summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *See Pecor v. Northwestern Nat'l Ins. Co.*, 869 F. Supp. 651, 654 (E.D. Wis. 1994).

Summary judgment is proper on each claim when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The mere existence of a factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). "Material" means that the factual dispute "might affect the outcome of the suit under governing law[.]" *Id.* at 248. A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## Argument

### I.   There is no evidence that delays in treatment—if any—caused Heard harm.

To reach the jury on an Eighth Amendment claim alleging delays in treatment, the inmate must "provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016).

4

In other words, a claim based on delay in treatment "will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009); *Williams v. Liefer,* 491 F.3d 710, 715 (7th Cir. 2007). Simply put—where there is no cause, there is no liability, and speculative allegations of cause do not pass muster on summary judgment.

Courts routinely dismiss deliberate indifference claims for lack of cause. For example, in *Wilson v. Adams*, an inmate claimed that his treatment was delayed for three-and-a-half months despite repeated requests for treatment. 901 F.3d 816, 822 (7th Cir. 2018). As the court explained, "a plaintiff must prove the delay in treatment exacerbated the injury or unnecessarily prolonged pain" to prevail. *Id.* at 822. Because the plaintiff was "unable to identify any evidence that such resulted from the delay," summary judgment for the defendants was proper.

Numerous other cases apply this bedrock principle of tort law to grant summary judgment where there is no evidence that delays in treatment caused injury:

- *Casey v. Schueler*, No. 18-CV-1002-JDP, 2020 WL 6081713, at *10 (W.D. Wis. Oct. 15, 2020): Granting summary judgment where, "while he was waiting for his treatment, [plaintiff] had both pain medication and ice" and "health services staff ultimately recommended that [plaintiff] treat his wrist through rest, ice, evaluation, and pain relievers" because plaintiff did not show that the "delay in treatment worsened his wrist injury or caused him needless pain."

- *Johnson v. Obiora*, No. 17-C-15, 2018 WL 4496313, *3-4 (E.D. Wis. Sept. 19, 2018): Granting summary judgment for the defendant because plaintiff presented no evidence that a ten-day "delay detrimentally affected, unnecessarily prolonged, or exacerbated his pain."

- *McDonald v. Lovell*, No. 11-CV-762-SCW, 2014 WL 520901, at *5 (S.D. Ill. Feb. 7, 2014): Granting summary judgment for the defendant where, during a six-day delay, plaintiff treated his skin ailment with Vaseline and ibuprofen, and his condition improved.

- *Cooper v. Mahone*, No. 11-CV-04455, 2014 WL 4813740, *1-2 (N.D. Ill. Sept. 29, 2014): Granting summary judgment where an inmate did not

> receive a leg brace for approximately seven months because the inmate "failed to provide evidence that would permit a jury to find that any harm he suffered was the result of Defendants' delayed provision of his knee brace rather than his original injury."

As these cases show, cause is an essential element of a deliberate indifference claim, and a plaintiff must prove cause to reach the jury.

As this Court correctly noted, for Heard to prevail, he must "prove that more prompt treatment would have made a difference in lessening his pain or that it would have improved his long-term condition." (Opinion and Order, Dkt. 6 at 4). In cases where care was allegedly delayed, such as here, the plaintiff must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Williams*, 491 F.3d at 715. "That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Id.* Confirming or corroborating evidence may be offered through expert testimony or the plaintiff's medical records. *Kendrick v. Frank,* No. 05-C-0976, 2008 WL 11452081, at *4 (E.D. Wis. Mar. 21, 2008).

Here, Heard cannot prevail in his deliberate indifference claim against Dr. Patterson because he lacks "verifying medical evidence" showing the alleged delay caused harm. Heard's expert disclosure deadline of May 21, 2021 has passed without Heard naming any experts, (Preliminary Pretrial Conference Order, Dkt. 19 at 6), so Heard must rely on his medical records to provide evidence corroborating his claim. However, the medical records do not show that the alleged delay caused Heard harm.

Instead, the records show Heard has chronic swelling in his legs and was provided with reasonable treatment when he complained of swelling and pain. On April 7, 2018, the day of Heard's alleged injury, the on-call doctor—Dr. Kuber—was contacted. (PFOF 11). Dr. Kuber ordered five days of diuretics, seven days of painkillers, and ten days of antibiotics to treat the swelling in Heard's legs. (PFOF 11-12). He also instructed Heard to elevate his legs and ordered additional medication if

Heard's condition worsened. (PFOF 11). The next day, Heard reported his condition was improving. (PFOF 14). For the next eight days, Heard did not complain of any pain or swelling. (PFOF 20). If Dr. Patterson had the opportunity to see Heard during the alleged delay, Dr. Patterson would have continued Dr. Kuber's ordered course of treatment. (PFOF 21). After Heard's appointment was rescheduled for the second time, Heard raised complaints of continued swelling and pain in his legs. (PFOF 22). Heard was seen the next day by Dr. Patterson, who ordered additional treatment. (PFOF 23-24). During the alleged nine-day delay, Heard had a prescription for diuretics, antibiotics, and painkillers, and was to elevate his legs. (PFOF 11-12). The evidence shows that Heard received reasonable treatment for his swelling and pain from both Dr. Kuber and Dr. Patterson, and there is no evidence corroborating or confirming Heard's speculation that the alleged delay caused Heard unnecessary pain or worsened his condition.

Heard also alleges that he developed an open wound on his left ankle on October 7, 2019—a year and six months after the alleged delay. (Compl., Dkt. 1 at 4). He also alleges that the nine-day delay caused him "to live in daily pain, and agony with [p]ermanent discoloration to both of his legs with swelling still as of 2019." (Compl., Dkt. 1 at 3). The medical records do not provide "verifying medical evidence" supporting these allegations. The records show that Heard had chronic swelling in his legs both before and after the alleged delay and do not show that the alleged delay caused the swelling, wound, or discoloration in Heard's legs. Specifically, records from October 7-8, 2019, show that Heard had "intermittent bleeding" on his left ankle with a "needle size puncture wound present." (PFOF 29). The wound was treated, and the records do not suggest any cause for the intermittent bleeding, including the alleged delay of treatment in April 2018. (PFOF 29). The records also do not show that the ongoing swelling in Heard's legs or discoloration to his legs—if any—was caused by the alleged delay. (PFOF 30).

Heard will most likely argue that the delay in treatment was deliberately indifferent because Dr. Patterson documented in his chart that Heard did not have a history of swelling in his right leg. (Compl., Dkt. 1 at 3). In his Complaint, Heard alleges that Dr. Patterson "paid a lack of attention" to Heard's medical file and that leg swelling "is a chronic issue Mr. Heard deals with daily." (Compl., Dkt. 1 at 3). The fact that Heard's swelling was chronic, or as he alleges, a daily issue, does not prove that the alleged delay caused Heard unnecessary pain or permanent discoloration of his legs. To the contrary, it shows that Heard's symptoms were caused by a chronic condition, not any alleged delays. As discussed below, Heard's allegation that Dr. Patterson "paid a lack of attention" also does not show that Dr. Patterson was deliberately indifferent.

Heard has no medical evidence corroborating his allegation that any delays caused unnecessary pain or exacerbated his condition. Heard thus cannot meet his burden of proof on summary judgment, and this Court should grant summary judgment for Dr. Patterson. *See, e.g., Wilson*, 901 F.3d at 822 (granting summary judgment because plaintiff could not show delay caused harm).

**II.    Dr. Patterson did not have subjective knowledge of Heard's alleged condition and thus was not deliberately indifferent to his needs.**

An Eighth Amendment deliberate indifference claim requires conscious disregard of an objectively serious risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To prove deliberate indifference, a plaintiff must prove two things: the defendant 1) knew there was a substantial risk of serious harm, and 2) personally and consciously disregarded that risk. *Petties*, 836 F.3d at 727-28.

Put differently, a plaintiff must prove "subjective awareness" and "an *inadvertent* failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105

8

(1976). "The standard is a subjective one: The defendant must know facts from which he could infer that a substantial risk of serious harm exists and he must actually draw the inference." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). And a defendant "can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety." *Petties*, 836 F.3d at 727-28. This high threshold "tethers the deliberate-indifference cause of action to the Eighth Amendment's prohibition of cruel and unusual punishment[.]" *Whiting*, 839 F.3d at 662.

Negligence falls short of the high standard for deliberate indifference. *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988). Under the Eighth Amendment, inmates are "not entitled to the best possible care" or demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Instead, inmates are "entitled to reasonable measures to meet a substantial risk of harm[.]" *Id.*

Here, the evidence does not show that Dr. Patterson was aware of a substantial risk of serious harm to Heard or deliberately ignored such risk. Instead, the evidence indicates that Heard received treatment for his condition from Dr. Kuber, reported his condition was improving, and—for eight days—did not complain of swelling or pain. The evidence also shows that when Heard mentioned pain in an Inmate Complaint, he was seen by Dr. Patterson the next day. A health care provider cannot be deliberately indifferent when the records show the inmate received treatment and that his condition improved, and the health care provider was not informed that the inmate had additional complaints of pain or that his condition worsened. As discussed above, Heard also alleges that Dr. Patterson inaccurately noted that Heard did not have chronic swelling in his right leg. (Compl., Dkt. 1 at 3). Inaccuracies in charting do not meet the high threshold for deliberate indifference, which requires personal and conscious disregard for a known serious medical condition.

Without evidence that Dr. Patterson had actual awareness of a substantial risk of serious harm to Heard and that he disregarded that risk, Heard's claim for

9

deliberate indifference must fail. *See, e.g.*, *Zaya*, 836 F.3d at 804 ("The defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference."); *Chatham v. Davis*, 839 F.3d 679, 684–85 (7th Cir. 2016). For this reason alone, the Court should grant Dr. Patterson's motion for summary judgment.

### III. Dr. Patterson is not responsible for scheduling appointments and cannot be held liable for failing to do another person's job.

Public employees and contractors are liable under Section 1983 "for their own misdeeds but not for anyone else's." *Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009). This is because deliberate indifference requires "personal involvement in the alleged constitutional deprivation." *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Scheduling appointments is no exception, and if the defendant "was not personally involved in depriving plaintiff of an earlier appointment, she cannot be liable under the Eighth Amendment." *Aponte v. Suliene*, No. 14-CV-132-JDP, 2016 WL 4539223, *7 (W.D. Wis. Aug. 30, 2016) (granting summary judgment to defendant who "had no personal involvement in scheduling off-site appointments"); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002) (prison physician was entitled to summary judgment where plaintiff presented no evidence that delays "were even within [defendant]'s control, much less that he was deliberately indifferent to [plaintiff]'s medical needs.").

In *Dobbey v. Carter*, an inmate brought Eighth Amendment claims for deliberate indifference against a prison doctor. 734 F. App'x 362, 363 (7th Cir. 2018). The inmate alleged that the doctor failed to follow up with him after administering a steroid injection. *Id.* The district court granted summary judgment for the doctor, and on appeal, the decision was affirmed. *Id.* At the appointment where the doctor administered the injection, the doctor noted that he planned to follow up with the inmate in three weeks. *Id.* at 363. But the nursing staff were responsible for scheduling appointments and did not schedule the appointment. *Id.* The staff eventually

scheduled the appointment, but it was canceled because of a lockdown. *Id.* When the inmate was seen by the doctor months later, the doctor prescribed additional medication. *Id.* Summary judgment was proper because the doctor "could not be personally responsible for scheduling *any* appointments with inmates because appointments were scheduled by the nursing staff." *Id.* at 364.

As in *Dobbey*, Dr. Patterson was not responsible for scheduling inmate appointments at WSPF. (PFOF 8). Because Dr. Patterson had no "personal involvement" in the alleged delays, he cannot be liable for them. *Aponte* 2016 WL 4539223, *7. The records show that after Dr. Patterson was unable to see Heard due to time constraints, Dr. Patterson directed the Health Services Unit to "reschedule for tomorrow if possible." (PFOF 16). Dr. Patterson is not responsible under the law for the alleged misdeeds of someone else. *Burks*, 555 F.3d at 596. For this reason, in addition to the two reasons discussed above, this Court should grant Dr. Patterson summary judgment and dismiss Heard's claims against him.

## Conclusion

For the foregoing three reasons, Dr. Patterson respectfully requests the Court grant his Motion for Summary Judgment and dismiss all claims against him.

Dated this 15th day of July, 2021.

        GASS TUREK LLC
        Attorneys for Defendant, Dr. James Patterson


        *s/ Rachel E. Potter*
        Linda V. Meagher, WI SBN 1000558
        meagher@gassturek.com
        Rachel E. Potter, WI SBN 1102790
        potter@gassturek.com

Address
241 North Broadway, Ste 300
Milwaukee, WI 53202
Phone: 414-223-3300
Fax: 414-224-6116